WALBRIDGE v. NEW YORK ALASKA GOLD DREDGING CO.

No. 3077.

Fourth Division.

Dec. 11, 1928.

66

John A. Clark, of Fairbanks, for plaintiff.

R. E. Robertson, of Juneau, and Harry E. Pratt, of Fairbanks, for the defendant.

CLEGG, District Judge.

Examining the case now as it has developed after the presentation of evidence on both sides to the point where they both have rested in the light of the pleadings, it appears to be proven conclusively from plaintiff's testimony and the defendant's that the plaintiff was employed as superintendent and general manager at or about the time alleged in his complaint by the board of directors of the defendant company under an agreement whereby he was to receive the sum of $7,200 per annum, payable at the rate of $600 a month, or in such other installments as the board of directors might decide, and that such salary was to accrue until such time as the board of directors canceled the same, and that, in pursuance of this contract entered into, the plaintiff assumed the duties of the office to which he was appointed by the defendant company and continued to work, commencing on the 1st of April, 1922, to the 31st of March, 1923, and the company, as the evidence shows, paid him the sum of $6,600 for eleven successive months of that period, and a permanent, binding, and enforceable contract was thereby created by this action of the board of directors of the defendant company and this action of the plaintiff.

In order to change that situation, there must be some affirmative action by the board of directors of the

defendant company. The contract itself provides that the salary is to accrue until the same is canceled by action of the board of directors. That means that it was a positive, unequivocal, and affirmative action on the part of the board of directors that was to take place before this contract could be canceled.

There is no evidence introduced here of any action such as is contemplated in this agreement and contract ever having taken place. The most that can be said is that there were desultory, random, and hasty conversations had between members of the board of directors and the plaintiff.

This provision in the contract also implies that the action of the board of directors was to be reduced to writing and spread on the minutes, and there is no evidence that anything of that kind ever took place.

In order to change the contract also, it might be done by action of the plaintiff. He might die. He might voluntarily resign, or he might possibly waive this provision in the contract, either expressly or impliedly, but there is nothing of that kind pleaded in the second amended answer, and no proof is offered on that subject. The testimony is conclusive that up until that period of time, March 31, 1923, this contract was in force, and the plaintiff was entitled to the money stipulated therein as his compensation.

In the year 1923, as alleged in the answer, the defendant denies the employment of the plaintiff, and denies that he worked for the company during said period. This contract being in force, as I have stated, it was necessary for the defendant company to plead something other than that—that he was not employed or that he did no work. As the court views it, it was incumbent upon the defendant to plead that the plaintiff had either abandoned the contract or had resigned, because, if the contract is once in force, it is presumed to continue until it is terminated in the manner provided, by the motion and resolution of the board of directors. All that the plaintiff would have to do in order

to recover for the year 1923 is to show that he stood ready, willing, and able at all times to perform the duties of general manager. It is not a question of whether or not he ever went to Alaska or whether or not he ever did anything for the company under the terms of the contract as superintendent and general manager.

The same thing is true of the year 1924. While the answer admits and the proof shows that the plaintiff went to Alaska and attempted to prosecute the duties of superintendent and general manager there during that year, still the defendant asserts that he was to do so at his own expense, and that he was to receive no salary. This contract was a permanent enforceable contract during the year 1924, and, even though he did not go to Alaska, he would be entitled to the salary which is stipulated in the contract.

It is further claimed that in the year 1925 and thence on to November 30, 1927, the defendant claims, and to January 5, 1928, the plaintiff claims, the plaintiff worked as superintendent and general manager of the defendant company, but it is claimed by the defendant that it was upon an agreement that he was to receive only half of the stipulated salary which the contract provided for, and the balance was to be paid at some future time. The contract itself provides how the installments of the salary shall be paid, and says it shall be $600 a month unless and until the board of directors otherwise decide, and, in order for the defendant to recover, it would certainly have to prove to the court or to the jury that the board of directors, by affirmative action, changed the amount of the installment which was to be paid monthly. In the absence of such showing, the evidence is in favor of the plaintiff and no evidence to the contrary on the part of the defendant.

This stipulation in the contract that the salary was to accrue until the same was canceled by action of the board of directors, undoubtedly was for the very purpose of preventing the terms of the contract to be made to depend upon oral testimony. Impliedly, if the board of directors acted upon it, it was to be written down, and it was

70

not to be guessed at by desultory conversations between members of the board of directors with the plaintiff who had no authority from the company to make any different arrangement than was spread upon the minutes of the meetings of the board of directors.

There is no issue, so far as the court can see, for the jury to decide, either raised by the denials or by the affirmative matter set up in the defendant's affirmative defense and counterclaim or in the plea in abatement included therein, so the court is bound to enforce the terms of this contract as it is written to the letter, where there is no evidence sufficient to submit to the jury on any other question, and will accordingly hand the jury a verdict, and will ask the jury to elect a foreman and to find for the plaintiff and against the defendant as demanded in plaintiff's complaint. The figures have been computed and verified, and I will submit the verdict to you.

An order may be entered at the same time granting a nonsuit on the defendant's affirmative defense and counterclaim.